UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK CARBERRY,

               Plaintiff,

v.

TEXTRON PENSION PLAN, et al.,

               Defendants.

_____/

CIVIL ACTION NO.  07-10892

DISTRICT JUDGE SEAN F. COX

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**   **RECOMMENDATION**:

I recommend that Plaintiff's Motion to Reverse the Plan Administrator's Decision be denied and that Defendants' Motion to Affirm Pension Plan Administrator's Decision be granted.

**II.**   **REPORT**:

### A.   Procedural History

Plaintiff's Complaint was filed on February 28, 2007.  The prayer for relief seeks a declaration that Plaintiff is entitled to "credited service" to his employer for the periods (sic) of September 19, 1981 to March 31, 1999; and that his severance from such service was March 31, 1999.  Defendants filed their Answer and Affirmative Defenses on March 21, 2007.  On the following day, the court entered an ERISA Scheduling Order, and Plaintiff filed his Reply to the Affirmative Defenses.

Following a scheduling conference on June 4, 2007, the court issued a Second Scheduling Order calling for the filing of cross motions to reverse/affirm the administrator's decision.  On June 19, 2007, the schedule was amended by Stipulation.

Plaintiff's Motion to Reverse the Plan Administrator's Decision was filed on August 10, 2007. Defendants' Motion to Affirm Pension Plan Administrator's Decision was filed on August 13, 2007. Plaintiff filed a Response to Defendants' Motion on August 21, 2007, and Plaintiff filed his reply on August 28, 2007. Defendants filed their Response to the Plaintiff's Motion on August 30, 2007.

On August 23, 2007, the dispositive motions were referred to the magistrate judge. The motions were brought on for hearing on October 31, 2007.

**B.     Applicable Law and Standard of Review**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989), the Supreme Court held that a denial of pension benefits challenged under §1132 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq., "is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. Where "a plan does confer such discretionary authority, [courts] review benefit decisions under an 'arbitrary and capricious' standard." Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). An ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." Id. at 381. Where the decision is rational, a court may not second guess the decision. It must be upheld. Wages v. Sandler, O'Neal and Partners, L.P., 37 Fed.Appx. 108, 112-13 (6th Cir. 2002) (relying on Yeager). The arbitrary and capricious standard requires that a decision "be upheld if it the result of a deliberate, principled reasoning process, and if it is supported by substantial evidence."

<u>Mitchell v. Dialysis Clinic, Inc.</u>, 18 Fed.Appx. 349, 353 (6th Cir. 2001) (citing <u>Killean v. Health Source Provident Admin., Inc.</u>, 152 F.3d 514, 520 (6th Cir. 1988).  Under either standard of review, the court is confined to the record that was before the plan administrator.  <u>Miller v. Metropolitan Ins. Co.</u>, 925 F.2d 979, 986 (6th Cir. 1991).

     C.    **Factual Background**

Based upon my review of the administrative record, I reach the following findings of fact:

1.  Plaintiff began working for Cadillac Gage, an indirect subsidiary of Textron, Inc. on September 19, 1981.  (Admin. Record, Page 9).

2.  Plaintiff participated in the Ex-Cell-O Corporation Consolidated Salary's Retirement Plan that was later merged into the Textron Pension Plan (hereinafter "Plan") (Admin. Record, Page 50, 52).

3.  For purposes of ERISA, the Plan designates Textron, Inc. As Plan Administrator and provides that Textron "shall be solely responsible for the general administration of the Plan and for carrying out the provisions thereof, and shall have all such powers as may be necessary to do so."  (Plan Section 11.02(a)).

4.  On August 17, 1989, while acting in the course of his employment, Plaintiff was injured.  (See Admin. Record, Page 1; Metzger Deposition, Page 19).

5.  Plaintiff was awarded Workmen's Compensation Benefits in connection with his injury.  (Admin. Record, Pages 43-44).

6.  Plaintiff performed no work for Cadillac Gage or any successor business after his August 19, 1989 injury.

7.  For several months following his injury, until March 14, 1990, Plaintiff received full salary continuation from Cadillac Gage.  (Admin. Record, Pages 1, 33-36).

8.  Plaintiff received a W2 Form from Textron for the tax year ending 1990.  (See Admin. Record, Page 30; Plaintiff's Deposition, Page 21).

9.  For approximately nine years following his injury, Plaintiff received Worker's Disability Compensation Benefits.  (Admin. Record, Pages 31, 33-36, 44-48).

10.  On October 18, 1994, Mr. Carberry was notified that he would be receiving Social Security Disability Insurance Benefits for the period commencing July 1993.  (Admin. Record, Page 2).

11.  On January 20, 1999, Mr. Carberry received a statement from Pat Culberhouse, Benefits Manager for HR Textron, indicating that upon continued service accrual to February 1, 2008, his vested monthly benefit in a single life annuity form would be $1,047.46 beginning on February 1, 2008.  (Admin. Record, Page 3).

12.  On March 16, 1999, Plaintiff redeemed his Worker's Compensation Disability Claim and his weekly benefit ended.  (Admin. Record, Page 49).

13.  On November 19, 2002, Plaintiff was advised by letter from the Textron Benefits Service Center (Ms. Cathy Doolin) that upon his termination of employment on August 17, 1989 and continued service accrual to February 1, 2008, he was "vested in a monthly Single-Life Annuity form of retirement benefit of $1,047.46 beginning on February 1, 2008." (Admin. Record, Page 40).

14.  On March 23, 2004, Plaintiff received a Notice providing him with estimated benefits under the Textron Master Retirement Plan ("TMRP") under various payment options.  (Admin. Record, Pages 6-10).

15.  Plaintiff's monthly retirement benefit at age 65 was estimated at $394.47, which amount was calculated on the basis that August 17, 1989 was his last day of employment. (Admin. Record, Page 6).

16.  On May 17, 2004, Plaintiff wrote a letter to Gillian Bowles at Textron, stating that, in 1999, he was offered a monthly pension of $422.00 but delayed collection of his benefits for 15 years to 2008 because he was told that he could expect to receive $1047.46 per month at age 65.  (Admin. Record, Page 12).

17.  On November 30, 2004, Textron responded to Plaintiff's Appeal, providing him with an explanation of benefits.  (Admin. Record, Pages 13-16).

18.  In its response, Textron explained the error in prior estimates, and provided calculations supporting the award of $394.47 per month based on Plaintiff's average annual compensation and his credited service.  (Admin. Record, Pages 13-16).

19.  Plaintiff was provided with information concerning his right to further appeal the determination.  (Admin. Record, Pages 14-16).

20.  On February 14, 2006, Plaintiff sent documentation to support his final Appeal to the Plan Administrator.  (Admin. Record, Page 20).

21.  On April 13, 2006, Plaintiff received a final determination from George Metzger, Vice President of Human Resources and Benefits, Textron, Inc., stating that Plaintiff would receive $394.47 per month at age 65.  (Admin. Record, Pages 50-56).

22.  The Plan expressly grants discretion to the Plan Administrator, stating that Textron (and any person or persons to whom it delegates any of its authority as plan administrator) "shall have discretionary authority to determine eligibility for Plan benefits, to construe the terms of the Plan, and to determine all questions arising in the

administration of the Plan" and that any such determination shall be final, conclusive and binding upon participants.  (Plan Section 11.02(a)).

23.  Plaintiff is sixty-four years of age, and was born on January 27, 1943.  (Admin. Record, Page 9).

### D.  Analysis

The factual history of this case is essentially uncontested.  The essence of the controversy lies in the conflicting interpretations which the parties assign to the language of the Plan.  Pursuant to Section 11.02 of the Plan document, Textron Inc. is the Plan Administrator and is solely responsible for the general administration of the Plan and for carrying out its provisions.

> Textron Inc. (and any person or persons to whom it delegates any of its authority as Plan Administrator) shall have discretionary authority to determine eligibility for plan benefits, to construe the terms of the Plan, and to determine all questions arising in the determination of the Plan, and shall make all such determinations and interpretations in a non-discriminatory manner.  Subject to Section 11.02(c), any such determination shall be final, conclusive and binding on each member and all persons claiming by, through or under him.

Textron Pension Plan, Section 11.02(a).[1]  Because the Plan affords the administrator discretionary authority to determine eligibility, judicial review of his benefits decisions must be conducted under the highly deferential "arbitrary and capricious" standard.  Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996).

In applying the arbitrary and capricious standard of review, a court is required to consider only the facts available to the Plan Administrator at the time of the decision.  A

---

[1]  Plan Section 11.02(c) establishes administrative requirements and time limitations for the handling of claims under the Plan.

Plan Administrator's eligibility determinations are not arbitrary and capricious if they are "rational in light of the Plan's provisions."  Yeager, 88 F.3d at 380, 381 (6th Cir. 1996). Where a plan grants an administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, courts grant "great leeway" in the review of such decisions.  Moos v. Square D Co., 72 F.3d 39, 42 (6th Cir. 1995).  Where a decision is rational, a court may not second guess the administrator.  Wages v. Sandler O'Neill and Partners, L.P., 37 Fed.Appx. 108, 112-13 (6th Cir. 2002).  "Thus, the standard requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'"  Mitchell v. Dialysis Clinic, Inc., 18 Fed.Appx. 349, 353 (6th Cir. 2001) (citing Killian v. Healthsource Provident Admin., Inc., 152 F.3d 514, 520 (6th Cir. 1998).

The central issue in this case is the amount of credited service to which Plaintiff is entitled for purposes of determining his retirement benefits under the Plan.  Plaintiff maintains that he is entitled to be credited for service from the commencement of his employment with Cadillac Gage, on September 19, 1981 to and including January 27, 2008, on which date he will attain the age of 65.  Defendant maintains that Plaintiff is entitled to a period of credited service from his initial date of employment until the first anniversary of his last day of active service.  As the parties agree that Plaintiff rendered no service following his on the job injury on August 17, 1989, the Plan Administrator has determined that Plaintiff's credited service for retirement purposes ended on or before August 18, 1990, based upon a severance from service effective on that date.  Plaintiff challenges the administrator's decision on two bases: (1) that it is inconsistent with the

terms of the Plan; and (2) that it is inconsistent with the affirmative representations of other Textron employees, upon whose statements the Plaintiff has detrimentally relied.

## 1. Plan Provisions

Plaintiff's analysis "starts with the definition of a 'Covered Employee'". (Plaintiff's 8/10/07 Brief, Page 11). Section 1.01(j) of the Plan somewhat repetitiously defines that term as "an Employee employed by an Employer Unit" on either a salaried or commission basis. "Employer Unit" is a defined term under Section 1.01(n), and there is no dispute that Cadillac Gage and Textron meet the definition. Nor is there any dispute that Plaintiff worked on a salaried basis prior to his injury.

Section 4.01 of the Plan defines "Credited Service." Subsection (d) provides as follows:

> (d) In the case of a Covered Employee who incurs a Total Disability on or after January 1, 1981 and a Termination of Employment as a result thereof, the years and fractions of a year in completed months which occur after his Termination of Employment and prior to the first to occur of (i) his death, (ii) his recovery from Total Disability, (iii) the first day of the first month after his attainment of age 65, or (iv) the commencement of his benefit payments under this Plan, plus provided, however, if such Member received or was deemed to receive a single sum under Section 7.07, any benefit the Member subsequently may be entitled to receive under the Plan shall be reduced by the actuarial value of such single sum.

The subsection contains several defined terms, including "Covered Employee," "Total Disability" and "Termination of Employment." Plan Section 1.01(ff) defines "Total Disability" as follows:

> (ff) "<u>Total Disability</u>" - physical or mental incapacity (excluding, however, (i) incapacity resulting from injury or disease incurred while serving in the Armed Forces of the United States and

> compensable as such by a Federal disability allowance; (ii) incapacity caused by or continuing because of chronic alcoholism or addiction to narcotics; (iii) incapacity resulting from the Covered Employee engaging in a felonious act; and (iv) incapacity resulting from or continuing because of an intentionally self-inflicted injury or illness) (sic) which enables a Covered Employee to receive disability benefits under the Federal Social Security Act.

Plan Section 1.01(cc) defines "Termination of Employment" as "the earliest of the dates on which an Employee of a Textron Company quits, is discharged, retires, dies or otherwise ceases to be employed by a Textron Company whether or not there is a Severance from Service. A Termination of Employment shall not be deemed to have occurred so long as an Employee is on an unexpired Leave of Absence." Plaintiff correctly observes that he received an award of disability benefits under the Social Security Act in October 1994, retroactive to July 1993. He also correctly declares that none of the specific exclusions to the Plan definition of "Total Disability" applies in this case.

Based on the foregoing propositions, Carberry argues that he satisfies the requirements of Plan Section 4.01(d) and is thus entitled to "Credited Service" not only for the periods of his active employment and medical leave of absence, but also from his "Termination of Employment" date until the earlier of (1) his death, (2) his recovery from total disability, (3) his 65th birthday, or (4) his receipt of Plan benefits. Plaintiff declares that none of those circumstances has yet occurred, and that "the earliest contingency that will occur is attaining age 65" in January 2008. On that basis, he maintains that he is entitled to the retirement benefit calculated on the basis of "Credited Service" from September 19, 1981 to January 27, 2008.

Defendant counters that Plaintiff's analysis is fatally flawed by his failure to recognize that the term "Covered Employee" incorporates the Plan defined term "Employee." Thus, in order to be a "Covered Employee," one must be an "Employee." Section 1.01(m) defines "Employee" as a person employed by a Textron company after January 1, 1989 on the basis of 1,000 hours of employment per year. Subsection (m) further provides that "[a]n Employee on a Leave of Absence shall continue to be an Employee until his Leave of Absence expires." The same definition further declares that "[a] person shall not be considered an Employee with respect to any period after his Termination of Employment," (with a single exception as provided in Section 4.02(a), which does not apply to the facts of this case.) "Leave of Absence" is defined in Sections 1.01(s) and 4.04. Section 4.04, as amended on December 15, 1998, and effective January 1, 1998, provides as follows:

> 4.04 - Leave of Absence
>
> In determining Credited Service or Vesting Service for purposes of this Article IV, there shall be included any period of Leave of Absence. The term "Leave of Absence" shall mean any leave of absence granted to an Employee by Textron on a non-discriminatory basis, on account of:
>
> (a) illness or disability of the Employee or family member,
>
> (b) service with a Textron Company which is not an Employer Unit,
>
> (c) death of a dependent or family member,
>
> (d) military service, in accordance with Section 414(u) of the Code, and provided the Member returns to employment as an Employee while retaining re-employment rights under Federal law,

> (e) any service with any other entity to the extent permitted by Textron, or
>
> (f) any other need to the extent permitted by Textron.
>
> An Employee shall be deemed to remain an Employee during any Leave of Absence. A layoff shall not constitute a Leave of Absence for purposes of this Article IV. Other than a Leave of Absence for military service, a Leave of Absence in excess of one year shall not be recognized for purposes of this Article IV. If a period of family or medical leave is not otherwise treated as a Leave of Absence pursuant to this Section 4.04, an Employee shall be credited with Vesting Service during such period, and shall participate in any Plan changes that become effective during such period, to the extent required by the Family and Medical Leave Act of 1993."[2]

Textron concedes that Plaintiff was an "Employee" within the meaning of the Plan when he entered upon his post-injury Leave of Absence. Defendant contends that, based on the terms of the Plan, Carberry continued to accrue "Credited Service" toward his pension, but only for the first year of his §4.04(a) Leave of Absence. Textron cites Plan Section 1.01(w), which defines the term "Severance from Service." That Section provides, in pertinent part, as follows:

> (w) "Severance from Service" - the earliest of (i) the date an Employee of a Textron Company quits, is discharged, retires or dies or
>
>       *            *            *
>
> (iii) the first anniversary of the date the Employee is first absent (but not on an unexpired Leave of Absence) from employment by a Textron Company for any other reason.

---

[2] The original Section 4.04 was to similar effect. It provided that "[o]ther than a Leave of Absence for military service, a Leave of Absence in excess of one year shall not be effective unless approved by Textron's Benefit's Committee." There is no evidence in this record of Committee approval for Plaintiff to remain on Medical Leave of Absence beyond the one year period.

Based upon Section 1.1(w), Textron maintains that a "Severance from Service" occurred as to Carberry on the first anniversary of the date he was first absent from his employment. Thus, "after one year, Plaintiff was no longer an Employee and, therefore, he was no longer a Covered Employee." (Brief in Support of Defendant's Answer to Plaintiff's Motion to Reverse Administrator's Decision, Page 5).

It is undisputed that Plaintiff performed no work for Cadillac Gage or Textron subsequent to his work related injury on August 17, 1989. The maximum period of injury related Leave of Absence allowable under Section 4.04 of the Plan is one year. Under Plan Section 1.01(w)(iii), a "Severance from Service" occurs on "the first anniversary of the date the Employee is first absent (but not on an Unexpired Leave of Absence) from employment by a Textron Company . . .." Defendant concludes that a "Severance from Service" as to Carberry occurred on or about August 17, 1990.

The Plan defines "Total Disability" as a "physical or mental incapacity . . . which enables a Covered Employee to receive a disability benefit under the Federal Social Security Act." Plan Section 1.01(ff). The record reflects, and the parties do not dispute, that Plaintiff was notified in October 1994 that he had been awarded Social Security Disability Insurance Benefits for the period commencing July 1993. (Admin. Record, Page 2). It is apparent, therefore, that Carberry's "Total Disability," as determined by an independent federal agency, did not commence until a "Severance from Service" had already occurred. From and after the date of that Severance from Service, Plaintiff was no longer an "Employee" of Cadillac Gage/Textron and thus could no longer be classified as a "Covered Employee." As Carberry's "Total Disability" occurred subsequent to his "Termination of Employment," the termination could not have been "as a result" of the total

disability, as would be required to afford Carberry "Credited Service" under Section 4.01(d) of the Plan.

Plaintiff contests the Plan Administrator's interpretation on two bases. First, Plaintiff accurately observes that "a declaration and award of Social Security Disability Benefits rarely occurs within one year," and that Section 4.04(d) does not require that the Social Security determination occur during a one year leave of absence. While I agree with both propositions, I do not agree that they undermine the Plan Administrator's determination in this case. While it is true that Mr. Carberry was not awarded Social Security Disability Benefits until October 1994, the agency determined that his disability (and thus his entitlement to benefits) commenced in July 1993. Such retroactive awards are typical, so as to not permanently deprive disabled claimants of benefits for the period during which their applications are being adjudicated. The difficulty for Mr. Carberry is that the Commissioner of Social Security determined that he was not totally disabled prior to July 1993. Had the Commissioner determined that Plaintiff was disabled (and thus entitled to retroactive benefits) commencing during the period of his medical leave of absence, I conclude that his "Termination of Employment" would have been "as a result thereof," for purposes of determining "Credited Service" under Plan Section 4.01(d). Under the facts of this case, however, the Social Security Administration determined that Carberry's period of disability did not commence until after the termination of his employment. Under these facts, I conclude that the Plan Administrator's decision is consistent with the Plan language.

Plaintiff also argues that "[t]here is no mandate that the 'Covered Employee', 'Total Disability', and 'Termination of Employment' elements all occur simultaneously." (Brief in Support of Plaintiff's Motion to Reverse, Page 13). As he admits in the next sentence of

13

his brief, however, the Plan requires that an individual be a "Covered Employee," that he incur a total disability after January 1, 1981, and that such total disability eventually results in a "Termination of Employment." Once again, however, applying the Plan definitions to the facts of this case, Plaintiff remained a "Covered Employee" only until the "Termination of Employment" at the expiration of his one year "Leave of Absence" in 1991. The Social Security Administration has determined that Carberry's "Total Disability" did not commence until July 1993, a point in time at which he was no longer an "Employee" and thus could not have been a "Covered Employee."

Under these facts, I am satisfied that Textron's interpretation of the Plan language is reasonable. Assessing the case under the highly deferential arbitrary and capricious standard, I am satisfied that the Plan Administrator's determination cannot be held to violate the Plan provisions.

## 2.    Promissory Estoppel

Plaintiff's Motion to Reverse the Plan Administrator's Decision also asserts that Textron Pension Plan fiduciaries made materially misleading statements regarding his pension eligibility, and that he relied upon those statements to his detriment. Defendant opposes Plaintiff's claim on three bases: (1) that the Complaint contains no estoppel claim; (2) that federal common law concepts of estoppel have limited application to ERISA claims; and (3) that, even if federal common law estoppel principles applied in this instance, Plaintiff has failed to establish all of the essential elements.

The Complaint in this action asserts, in Paragraph 17, that Plaintiff received a letter from Pat Culberhouse, Benefits Manager of HR Textron, on January 20, 1999, stating that: "[u]pon your continued service accrual to February 1, 2008, you will be vested in a monthly

14

single-life annuity form of retirement benefit of $1,047.46 beginning on February 1, 2008." That letter is cited, along with other alleged misrepresentations, in Plaintiff's Brief in Support of the Motion to Reverse the Administrator's Decision. Nonetheless, I agree with Defendant that no claim of estoppel is specifically pled in the Complaint. Rather, as expressed in Paragraphs 28 through 32 of the Complaint, Plaintiff's claims for relief are based upon the proposition that the Plan Administrator arbitrarily and capriciously failed to allocate the correct amount of credited service to which Carberry maintains that he is entitled under the Pension Plan. Plaintiff's failure to clearly assert an estoppel claim undercuts his argument. But even if it had been expressly pled, his claim is of dubious validity.

As Defendant has declared in its Brief in Response to the Motion to Affirm, the applicability of estoppel theories in ERISA cases is subject to considerable doubt. Clearly, state law theories cannot support a claim for benefits under an ERISA plan. Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275-76 (6th Cir. 1991), cert. denied, 505 U.S. 1233 (1992). In Armistead v. Vernitron Corp., 944 F.2d 1287 (6th Cir. 1991), our Circuit permitted limited application of federal common law estoppel principles in the interpretation of an ERISA welfare benefit plan. The court's decision, however, was narrowly applied only to unfunded welfare benefit plans, and the court "espress[ed] no opinion as to the application of estoppel principles in other situations. 944 F.2nd at 1300. See Bond v. General Motors Acceptance Corp., 1998 WL 58256; 142 F.3d 432 (6th Cir. 1998) (Table). The Complaint in the case at bar appears to assert a claim of breach of fiduciary duty under 29 U.S.C. §1104. (Complaint, Paragraph 26). In Bond, the court determined that the plaintiff's common law promissory estoppel theory "was subsumed

within the fiduciary obligation created by §1104," and thus could not be actionable under any alternative federal common law theory. 1998 WL 58256, at page 6. The court relied upon <u>Central States Pension Fund v. Mahoning Nat. Bank</u>, 112 F.3d 252, 256-57 (6th Cir. 1997) (resolving that the generally limited application of federal common law is especially circumscribed in ERISA actions and "can neither provide an independent source of rights with regard to the employee benefits plans nor substitute for the remedies authorized by the ERISA statute." ); see also <u>Weiner v. Klais and Co., Inc.</u>, 108 F.3d 86, 92 (6th Cir. 1997) (concluding that "federal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous" but may not be used to create a cause of action which would be inconsistent with ERISA's terms and policies in that the alleged conduct or relief sought is already the subject of an ERISA provision).

Even if it is assumed that estoppel principles may be properly applied in this case, Plaintiff would be required to prove each of the following elements: (1) conduct or language amounting to a representation of material facts; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the later has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation. <u>Bond</u>, <u>supra</u> at Page 4; <u>Armistead v. Vernitron Corp.</u>, 944 F.2d 1287, 1298 (6th Cir. 1991).

This court is confined to the administrative record before the Plan Administrator. That record reflects Plaintiff's declarations that Textron assured him of a pension benefit of $1,047.46 if he delayed collection of his benefits to 2008. In a letter of August 1, 2005

to Textron, Carberry asserted that Maureen Gray, Vice President of HR Textron "committed" to him that his benefit would be in that amount if he abstained from collection until February 1, 2008. (Admin. Record, Page 12). That contention, however, is unsupported by any statement or document by Ms. Gray in the record. In a letter of May 17, 2004 to Gillian Bowles, of Textron, Plaintiff declared that documents received by him in 1999 "promised" $1,047.46 if he delayed collection of his pension to 2008. (Admin. Record, Page 12). As pointed out by Defendant, however, the items of correspondence from Textron to Plaintiff which appear in the Administrative Record do not constitute "promises" or "commitments," but rather estimates based upon an assumption of continuous credited service under the Plan. In a letter to Plaintiff on January 20, 1999, Textron Benefit's Manager Pat Culberhouse wrote that "[u]pon your continued service accrual to February 1, 2008, you will be vested in a monthly . . . benefit of $1,047.46 . . . ." (Admin. Record, Page 3). A similar statement was issued in writing to Plaintiff by Kathy Doolin, of the Textron Benefits Service Center, on November 19, 2002. Ms. Doolin's letter clearly declares that its purpose is to provide Plaintiff with "estimated benefits" under various payment options. In my view, neither document promises, or even affirmatively declares, that Plaintiff is entitled to continued credited service. They merely communicate projected benefits based upon that assumption. Defendant concedes that the assumption of continued credited service was erroneous. The Plan Administrator's ultimate decision, however, was reasonably based upon the plain language of the Plan itself. "Principles of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." Bond, supra, at p. 5 (citing Fink v. Union Central Life Ins. Co., 94 F.3d 489, 492 (8th Cir. 1996); Hudson v. Delta

17

<u>Airlines, Inc.</u>, 90 F.3d 451, 458 n.12 (11th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed. 2nd 217 (1997)).

> There are at least two reasons for this.  First, . . . estoppel requires reasonable or justifiable reliance by the party asserting the estoppel.  That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.  Second, to allow estoppel to over-ride the clear terms of plan documents would be to enforce something other than the plan documents themselves.  That would not be consistent with ERISA.

<u>Bond v. General Motors Acceptance Corp.</u>, 1998 WL 58256 at Page 5.

Even if the Textron declarations relied upon by Plaintiff could be found to constitute affirmative representations of material fact, Plaintiff would still be required to establish Defendant's awareness of the true facts.  In this case, Carberry's entitlement to continued "credited service" subsequent to his injury was dependent upon the onset date of his "total disability as determined by the Social Security Administration.  I find nothing in the administrative record to establish that Textron was notified of Plaintiff's Social Security Disability Benefits onset date prior to the alleged misrepresentations upon which Plaintiff relies.  Nor do I find evidence establishing the third element of common law equitable estoppel, that is, that Defendant intended that Plaintiff would rely upon their (explicitly conditional) benefits predictions in making his retirement decision.  Innocent misrepresentations by benefits employees concerning estimated benefits do not create obligations for a pension plan.  <u>Green v. Exxon Mobil Corp.</u>, 470 F.3d 415 (1st Cir. 2006).  I agree with Defendant that, where a Plaintiff seeks to rely on equitable theories of estoppel to escape the terms of an ERISA plan, he must show that the party making a misrepresentation was aware of the true facts (i.e., that the misrepresentation was

intentional), and that reliance, if any, by Plaintiff was reasonable. (Brief in Support of Defendant's Answer to Plaintiff's Motion to Reverse Administrator's Decision, Page 10, citing <u>Bond</u>, <u>supra</u> at Page 3; <u>Brandt v. Principle Life and Disability Ins. Co.</u>, 50 Fed.Appx. 330, 331-32 (8th Cir. 2002). Even if estoppel concepts apply in an ERISA context, they may not be utilized to vary the terms of plan documents. <u>Sprague v. General Motors</u>, 133 F.3d 388, 403-04 (6th Cir. 1998).

It is impossible to view the facts of this case without substantial sympathy for this Plaintiff. It is beyond serious dispute that his injury has limited his earning capacity. I am satisfied as well that he innocently believed, to his detriment, that he was entitled to continued credited service toward retirement from Textron. I am also satisfied that the erroneous assumptions communicated to him by Textron employees played a role in his decision making. Nonetheless I conclude that Plaintiff's estoppel theory is neither pled in the Complaint nor established by the Administrative Record.

For all of the above reasons, I recommend that Plaintiff's Motion to Reverse the Administrator's Decision be denied, and that Defendant's Motion to Affirm Pension Plan Administrator's Decision be granted.

## III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Donald A. Scheer
                                        DONALD A. SCHEER
                                        UNITED STATES MAGISTRATE JUDGE

DATED: December 28, 2007

_____

**CERTIFICATE OF SERVICE**

I hereby certify on December 28, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on December 28, 2007. **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge Donald A. Scheer
                                        (313) 234-5217